STARR, HARKNETT & EDMISTON COMPANY, Respondent, v. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 19, 1906.

1. **COMMON CARRIERS: Delivery: Act of God: Damaged Consignment.** When a carrier receives a consignment which subsequently is injured by a cause for which it cannot be held liable such injury will not relieve the carrier of the duty to deliver to the consignee nor of the damages for failure to deliver.

2. ———: **Bill of Lading: Change of Consignment: Evidence.** On an examination of the evidence it is held that the carrier consented to a change of the consignment without a corresponding change of the bill of lading and received the substituted consignment under the original bill and became liable for prompt shipment thereof.

3. ———: ———: **Pleading: Evidence: Answer.** While there was a variance between the pleading and the bill of lading offered in evidence, *held*, the defect was cured by the answer.

4. ———: **Damages: Evidence: Remittitur.** *Held*, on the evidence that the finding of the lower court was excessive but same could be cured by remittitur.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn*, Special Judge.

AFFIRMED *si.*

*George P. B. Jackson* for appellant.

(1)    The bill of lading introduced by plaintiff was not the one set up in the petition. The plaintiff could not plead one contract and recover on another. Johnson-Brinkman Co. v. Bank, 116 Mo. 558. (2)    The defendant was not responsible for the loss resulting from the flood. Grier v. Railroad, 108 Mo. App. 565; Brewing Assn. v. Talbot, 141 Mo. 674; Moffatt v. Railroad, 113

Mo. App. 544. (3) A carrier is not liable on a bill of lading unless the shipper has delivered to the carrier the goods described in the bill. Bank v. Laveille, 52 Mo. 380; Bank v. Railroad, 69 Mo. App. 246; Bank v. Water Power Co., 58 Mo. App. 532; Moore on Carriers, 143. (4) If the goods are again tendered, it becomes an entirely new and different shipment, requiring a new bill of lading, or a specific agreement that the old bill is to apply and the shipping instructions therein contained are to control. Skilling v. Bolling, 73 Mo. 669; Bank v. Railroad, 42 Mo. App. 290; Moore on Carriers, 186, 159, 130, 133; Hartman v. Railroad, 39 Mo. App. 92; Railroad v. Montgomery, 39 Ill. 335. (5) Even upon the theory that a recovery could be had in this case for the value of the damaged meal, if that was the theory of the trial judge, the finding was against the evidence. Plaintiff's evidence, admitted over defendant's objection, was that the damaged corn was worth forty per cent of its former value, $293.42. Forty per cent of that is $117.36. The finding and judgment were for $129.36.

*M. F. Ringolsky* and *I. J. Ringolsky* for respondent.

(1) It is a well-founded principle of law that the liability of a common carrier attaches the moment delivery of goods is made and it incurs all responsibility of a carrier. Mason v. Railroad, 25 Mo. App. 473; Gregory v. Railroad, 46 Mo. App. 574; Bartlett v. Steamboat, 32 Mo. 256; Lachland v. Railroad, 101 Mo. App. 427. (2) Respondent made a prima facie case when delivery was made to M., K. & T. and bill of lading issued. The bill of lading is respondent's strongest evidence that delivery was made and the contract of carriage was complete between the parties. Holten v. Railroad, 61 Mo. App. 264; Davis v. Railroad, 89 Mo. 351; Grier v. Railroad, 108 Mo. App. 569. (3) The respondent does not deny that there was a flood and is not

suing for any damage caused by reason of the flood; respondent's theory of recovery is that after it had made a delivery of this car of meal to the M., K. & T. railroad company and said railroad company had issued its bill of lading for same, that said railroad company failed to hastily deliver and perform its contract of carriage as it obligated itself to do. Steamboat Lynx v. King & Fisher, 12 Mo. 278. (4) A common carrier cannot be excused from all responsibility when goods are damaged on account of their failure to perform a contract of carriage. Even though they plead the Act of God, they are accountable for the cash value in the open market for what the salvage will bring and the issues in the case at bar were properly raised by our pleadings. Davis v. Railroad, 89 Mo. 351; Grier v. Railroad, 108 Mo. App. 569.

ELLISON, J.—This action was instituted by plaintiff to recover the value of a carload of corn meal. There was a judgment for the plaintiff in the trial court.

It appears that the carload of meal was sold by the Southern Grain Company at Kansas City, Missouri, to plaintiff who was at Jacksonville, Texas. That a car of meal was delivered by the grain company to the Missouri Pacific Railway Company at Kansas City which had switch tracks connecting from the grain company's mill, a considerable distance, to the defendant's tracks. That the grain company had the Missouri Pacific Company, on May 26th, deliver a car of meal sacked in thirty-five pound sacks to the defendant upon which the defendant issued the bill of lading pleaded and filed with plaintiff's petition. Before the car was shipped out of Kansas City, plaintiff directed the grain company to ship in fifteen pound sacks. The grain company thereupon requested defendant and the Missouri Pacific Company to take the car back to the mill; which was done and a car loaded with fifteen pound sacks was then de-

livered to defendant on May 29th. The bill of lading which defendant had issued for the original car was not taken up nor changed. On May 31st, and before defendant had shipped the car out of Kansas City, an unprecedented flood occurred, which is conceded to have been of such character as to be called an Act of God, and which has been held to be of that character, in litigation which has since arisen. [Moffatt v. Railway, 113 Mo. App. 544.] This flood so damaged the meal that its value was reduced sixty per cent. It was never shipped out of Kansas City, but was sold by the defendant for $65, which sum it offered to plaintiff but which the latter refused to receive.

The defendant received the meal for shipment and it has never delivered it. The fact that while in its possession as a carrier, the meal was damaged by a cause for which defendant was not responsible and for which it cannot be held liable, will not relieve defendant of the duty to deliver it to the consignee, nor exonerate it from a payment of the damages consequent upon such failure to deliver. Such damages would be the value of the meal in its damaged condition. Such value is not necessarily what defendant obtained for it at, what was termed in evidence as, a salvage sale.

But there are several objections which defendant makes to the judgment. Plaintiff's petition declares on a bill of lading issued by defendant when, confessedly, the freight for which that bill was issued was not the freight which is the subject of this action. The evidence, however, tended to show that defendant consented to the change in the carload with the understanding that it would be shipped out under the original bill of lading. Defendant controverts this claim of the plaintiff. It contends that while such use of the original bill was sometimes permitted, the delivery of the freight as changed, never created an obligation on the carrier, as a carrier, to ship it out until it got renewed instructions

to do so. We have examined the evidence on this head and find, that there is enough, the circumstances which appear being considered, to sustain a finding that this substituted freight was received under the original bill of lading and was to be shipped out after receipt with proper diligence. And we find no objection from a legal standpoint to holding the carrier, under such bill of lading, liable for damages.

It is further objected that the bill as declared upon in the petition is not the bill introduced in evidence. The bill as described in the petition names plaintiff as consignee and as the party to whom defendant agreed to deliver the consignment; whereas the bill itself shows . on its face that the American National Bank was consignee and that such bank indorsed it in blank. But whatever difficulty might otherwise have been encountered by plaintiff on account of this objection is obviated by the answer which in terms admits that defendant "issued its bill of lading for a car of meal, consigned and to be shipped to the plaintiff at Jacksonville, Texas."

The value of the meal before the damage done was $293.42. The damage to this plaintiff, as already stated, was that sum less the decrease in value caused by the flood, for which defendant cannot be charged. The record shows that the defendant sold it after the flood for $65. But there is evidence by a witness (who was in fact the grain company) that the value of the damaged shipment was forty per cent of its original value. He stated something as to some such property caught in the flood being worth from forty to seventy per cent of its original value. But as to this shipment, which he only examined by sample, the only tangible or certain value he placed upon it was forty per cent. Forty per cent of the original value would be $117.36, whereas the court rendered judgment for $129.36, being excessive in the sum of $12. It is suggested that this might have been

interest, but there is nothing in the record to show that and no calculation of interest will bear out the suggestion. If therefore plaintiff will remit the sum of $12 within ten days the judgment will be affirmed. Otherwise it will be reversed and the cause remanded. The costs of the appeal to be taxed against the plaintiff. All concur.